No. 24221.

COLORADO POLYTECHNIC COLLEGE *v*. STATE BOARD FOR COM-
MUNITY COLLEGES, AND OCCUPATIONAL EDUCATION AND
STATE DEPARTMENT OF EDUCATION.
(476 P.2d 38)

Decided October 26, 1970. Rehearing denied November 16, 1970.

40

HUBERT D. HENRY, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, WILLIAM TUCKER, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

THIS writ of error arises out of an action for a declaratory judgment in the Denver District Court. Colorado Polytechnic College is a nonprofit corporation incorporated under the laws of the state of Colorado. As plaintiff in the trial court, it sought to have declared unconstitutional and void certain statutory provisions the enforcement of which it claimed would effectively put it out of business.

Plaintiff was incorporated in 1960 and has operated a school offering courses, among others, in manufacturing, engineering design, fine arts, commercial arts, industrial arts, advertising, and sales training, supplemented by certain courses in science and the humanities. Degrees are granted at the successful completion of a 48-month curriculum, which are designated as "Associate in Science," "Associate in Arts," and "Bachelor of Professional Arts." Plaintiff's school had a capacity for approximately two hundred students. At the time of the trial there was an enrollment of twenty-one students.

Plaintiff's program ran into difficulty as the result

of the passage by the general assembly in 1965 of an act regulating the awarding of degrees for academic achievement, codified as 1965 Perm. Supp., C.R.S. 1963, 124-21-1. The legislative policy is set forth in section 1 as follows: "The general assembly hereby declares that this article is enacted for the general improvement of the educational programs available to the residents of the state of Colorado; to establish high standards for the education of such residents; to prevent misrepresentation, fraud, and collusion in offering such educational programs to the public; to eliminate those practices relative to such programs which are incompatible with the public interest; and to protect, preserve, foster, and encourage the educational programs offered by private educational institutions which are of comparable standards to educational programs offered by state universities and colleges. To these ends, these sections shall be liberally construed."

The statute prohibits any person, partnership, corporation, company, society or association from awarding the types of degrees awarded by plaintiff. It excepts a "state college or university" and a "private college or university," and also certain other designated educational institutions with which we are not here concerned. "Private colleges and universities" are defined as follows:

" 'Private college or university' means an institution of higher learning doing business or maintaining a place of business in the state of Colorado, which requires as a prerequisite for admission to a degree program that a person shall have successfully completed high school or the equivalent thereof, and offers courses of instruction or study wherein credits may be earned toward a degree in a field of endeavor, the majority of which are generally acceptable or transferable to at least one college or university accredited by the New England Association of Colleges and Secondary Schools, or the Middle States Association of Colleges and Secondary Schools, or the Southern Association of Colleges and Secondary Schools, or the North Central Association of Colleges and

Secondary Schools, or the Northwest Association of Secondary and High Schools, or the Western College Association." 1965 Perm. Supp., C.R.S. 1963, 124-21-2(5). ;ᵗ

The record shows — and plaintiff does not contend otherwise — that credits for courses taught in plaintiff's school are not generally acceptable and transferable to any college or university accredited by any of the named accrediting associations. Nor is plaintiff itself an accredited private college or university. The statute imposes penal sanctions for its violation, and charges the State Department of Education, a defendant in the trial court, with the administration of the statutory provisions authorizing injunctive relief against violations through the office of the Attorney General of the State of Colorado. No injunctive proceedings have been commenced against plaintiff's degree-awarding program, but the state department has threatened such proceedings.

Plaintiff's problems were further complicated by the enactment in 1966 of the "Proprietary School Act of 1966," codified as 1967 Perm. Supp., C.R.S. 1963, 146-3-1, et seq. The legislative purpose of this act is set forth as follows: "The general assembly hereby declares that the provisions of this article are enacted in the exercise of the police powers of this state for the protection of the health, peace, safety, and general welfare of the people of this state; for the general improvement of educational programs available to the residents of this state; to prevent misrepresentation, fraud, and collusion in offering such educational programs; to establish higher standards for, and to protect, preserve, foster, improve, and encourage the educational programs offered to the public; and to encourage the residents of Colorado to attain a high degree of excellence in the pursuit of education. To these ends, this article shall be liberally construed." 1967 Perm. Supp., C.R.S. 1963, 146-3-2.

The State Board for Community Colleges and Occupational Education, also a defendant in the trial court, is likewise charged with the administration of this statute

which also grants injunctive remedies through the office of the attorney general.

The proprietary school act defines a proprietary school to mean a business enterprise which maintains a place of business within or without this state and which offers or maintains a course or courses of instruction or study through classroom instruction or by correspondence to a person for the purpose of training or preparing such person for a field of endeavor in a business, trade, technical or industrial occupation. It excludes from the category of proprietary schools various educational institutions, among which are schools supported entirely or in part by state or local taxes. Also excluded are private colleges and universities which are defined as follows: "Private colleges and universities which award an associate, a baccalaureate, or higher degree, and which maintain and operate educational programs for which credits are given. A majority of said credits must be transferable to a Colorado college, junior college, or university supported entirely or partly by taxation from either a local or a state source." 1967 Perm. Supp., C.R.S. 1963, 146-3-3 (3) (i).

The record discloses, without contention otherwise, that plaintiff's credits were not transferable to a Colorado college, junior college or university supported entirely or in part by tax sources.

The proprietary school act further requires as a condition precedent to operation as a proprietary school that a certificate of approval be obtained from the state board. Plaintiff here has refused to apply for such a certificate of approval contending it is not a proprietary school but rather a degree-granting educational institution. Accordingly, the state board has threatened proceedings against plaintiff to prevent its further operation as a school.

Plaintiff's school operations included vocational and technical courses the tuition for which could be paid for on behalf of veterans enrolled in such courses, provided the courses were approved by the administrator of vet-

eran affairs or a designated "state approving agency." The federal law involved provides:

"Unless otherwise established by the law of the state concerned, the chief executive of each state is requested to create or designate a state department or agency as the 'state approving agency' for his state for the purposes of chapters 34 and 35 of this title." 38 U.S.C. § 1771(a). There is no Colorado statute concerning the creation of an agency for this purpose; and, pursuant to request of the veterans administration, the governor of Colorado designated the State Board for Community Colleges and Occupational Education as the "state approving agency."

Plaintiff's president testified that the state board had refused to approve certain of its courses offered to veterans who by reason of nonapproval received no federal funds for tuition. The nonapproval was apparently related to plaintiff's refusal to qualify for a certificate of approval as a proprietary school under the proprietary school act. The administrator of veteran affairs would neither approve nor disapprove of the courses because of the executive designation of the state approving agency.

The plaintiff thus found itself in the situation where, although it had prior to the enactment of the degree-regulating statute operated its own degree program, it could no longer do so without danger of imminent civil and perhaps criminal prosecution. It likewise found itself subject to the regulations and limitations imposed by the proprietary school act, although it contended it was not a proprietary school but rather a private degree-granting college. Furthermore, it contended, that because of the nonapproval of certain courses by the state board (state approving agency) which disqualified veterans from receiving tuition benefits, it was cut off from a substantial source of revenue, threatening the continued existence of the school.

In its complaint for declaratory judgment, plaintiff alleged three claims for relief.

### I.

█ The first claim we discuss (designated in the complaint as plaintiff's third claim for relief) asserts that 1965 Perm. Supp., C.R.S. 1963, 124-21-2(5) relating to the definition of a "Private College or University," which under the act may award associate, bachelor, baccalaureate, master or doctor degrees, is unconstitutional as applied to plaintiff for the reason that the statute permits private associations of colleges, such as the North Central Association of Colleges and Secondary Schools, to determine accreditation standards whereby credits of a private college such as plaintiff may be measured for acceptance and transfer to a college which is a member of the accrediting association. It is contended, there having been no statutory standards prescribed, that the provision of the act is unconstitutional as an unlawful delegation of legislative powers. The trial court found against the plaintiff on this claim, to which ruling plaintiff assigns error. We affirm the judgment of the trial court.

█ We take judicial notice that recognized accrediting associations, such as are delineated in the statute in question, have become an integral part of the secondary education systems in America. They are voluntary, nongovernmental agencies which are accountable only to their own membership. Their purpose is to evaluate educational institutions according to standards and criteria which have evolved over many years of experience commencing in the 1800's. They accredit — that is, admit to membership — those colleges and universities they deem qualified. Their accrediting standards and criteria are not governmentally imposed. For an illuminating discussion, see Koerner, *The Case of Marjorie Webster,* 20 The Public Interest 40 (Summer 1970). See also *Marjorie Webster Jr. Col. v. Middle States Ass'n of C. & S.S.,* 302 F. Supp. 459; and *Marjorie Webster Jr. Col. v. Middle States Ass'n of C. & S.S.,* United States Court of Appeals for the District of Columbia Circuit, 432 F.2d 650 (1970).

 We do not agree that in acting under the police power of the state to carry out the purposes of the act it is constitutionally impermissible to determine the eligibility of private institutions of higher education to grant the degrees above referred to by reference to the criteria established by nationally recognized accrediting associations. On the other hand, we deem it entirely appropriate in the field of higher education to leave recognition of academic achievement to those institutions and associations which are uniquely qualified by professional training and experience to make such judgments. Necessity fixes a point beyond which it is unreasonable and impracticable to compel the legislature to prescribe detailed rules for the purpose of avoiding an unconstitutional delegation of authority. We deem it sufficient in the instant case that the legislature clearly delineated a general policy, as was done in the act under consideration: 1965 Perm. Supp., C.R.S. 1963, 124-21-1.

II.

 The trial court held 1967 Perm. Supp., C.R.S. 1963, 146-3-3 (3) (i), which was hereinbefore set forth, invalid and unconstitutional as applied to plaintiff, and enjoined the State Board for Community Colleges and Occupational Education from enforcing the provisions of the act. To this ruling the state board asserts error and seeks reversal. We agree with the state board's position and reverse the judgment on this claim.

It was plaintiff's claim that since no standards were specified by which state tax supported colleges and universities may determine what credits were transferable from private colleges to state supported institutions the power to reject credits was an invalid delegation of authority. We agree that arbitrary and unreasonable rejection of credits may render the act of rejection invalid and discriminatory in a particular case. However, in examining plaintiff's contention we are not limited to the particular section of the statute sought to be invalidated; rather, we may look to the organizational statutes

governing the creation and operation of the Colorado colleges and universities. 1 Am. Jur. 2d *Administrative Law* § 116.

It was not contended or demonstrated by evidence or otherwise that Colorado tax supported colleges and universities did not have the authority to adopt and had not adopted accrediting rules or standards which would be applicable uniformly to all persons seeking transfer. The only evidence on this point was the statement that plaintiff's attempt to have its credits transferred to Trinidad Junior College was rejected because plaintiff was not accredited by the North Central Association. It may be inferred from this testimony that such was the standard adopted by Trinidad Junior College. However, there is no evidence in the record as to what other state colleges may have done.

We note that the legislature, in granting to tax supported colleges and universities general governing powers and authority, has at each level of higher education specifically granted the governing body of the respective institutions the right and authority to adopt rules and regulations for the operation of the respective colleges and universities. For the Board of Regents of the University of Colorado, see C.R.S. 1963, 124-2-10 and 11; for the Board of Trustees of Colorado State College, Western State College, Adams State College, Southern Colorado State College, and Metropolitan State College, see C.R.S. 1963, 124-5-1 and 5; for the State Board of Agriculture for Colorado State University, Fort Lewis College and Mesa College, see C.R.S. 1963, 124-10-9; for the Board of Trustees of Colorado School of Mines, see C.R.S. 1963, 124-9-4; for Junior College Committees, see C.R.S. 1963, 123-23-23; and for State Board for Community Colleges, see 1967 Perm. Supp., C.R.S. 1963, 124-26-11. Implicit in the foregoing is the authority of the governing boards to adopt reasonable regulations governing accreditation for their respective institutions.

The burden was upon plaintiff to present substantial,

clear and convincing evidence to sustain his contention that the Proprietary School Act of 1966, as it was applied to Colorado Polytechnic College, was arbitrary, unreasonable and discriminatory and therefore unconstitutional. This it failed to do.

### III.

The trial court rejected plaintiff's third claim: that the governor's designation of the State Board for Community Colleges and Occupational Education as the "state approving agency" for approval or nonapproval of courses offered to veterans was without lawful authority.

We note that in the field of federal-state cooperation in the disbursement of federal assistance through state agencies, state enabling legislation is generally enacted. For example, the Community Colleges and Occupational Education Act, 1967 Perm. Supp., C.R.S. 1963, 124-26-22, which created the state board with which we are here concerned, specifically provides for the acceptance of the provisions, terms and conditions of certain congressional acts and designates the state board as the sole agency for compliance with those particular congressional acts. It does not, however, include the amendment to the federal "Veterans' Benefits" legislation with which we are here concerned. 38 U.S.C. § 1771. For further examples of enabling legislation, see C.R.S. 1963, 120-3-24, 120-7-2 and 120-8-2(3) and (7), concerning the Department of Highways; and C.R.S. 1963, 119-1-8(2)(g) and 119-4-1, concerning the Welfare Organization Law.

It is fundamental that the governor derives his authority from the constitution and laws enacted pursuant thereto. Likewise, the authority of a state created agency must be found in the statute creating the same. No constitutional or legislative authority, express or implied, has been cited by the state board, conferring an appointive power upon the governor or authority upon the state board to act on behalf of the federal government as a "state approving agency." In the absence of an enabling act conferring such power and authority upon

the governor and the state board, the action of the governor and the state board was a nullity.

The judgment of the trial court upholding the constitutionality of 1965 Perm. Supp., C.R.S. 1963, 124-21-2 (5), is affirmed.

The judgment of the trial court declaring 1967 Perm. Supp., C.R.S. 1963, 146-3-3(3)(i), unconstitutional as applied to plaintiff is reversed and the cause remanded with instructions to vacate the order enjoining the State Board for Community Colleges and occupational Education from enforcing the provisions of the statute.

The judgment of the trial court approving the appointment by the governor of the State Board for Community Colleges and Occupational Education as the "state approving agency" is reversed and the agency action pursuant to such purported appointment is hereby declared to be null and void and of no force and effect.

MR. CHIEF JUSTICE McWILLIAMS, MR. JUSTICE DAY and MR. JUSTICE GROVES concur in points I and II, but dissent to point III.