928 P.2d 250

Virginia **MADRID** and Christine
Rodriguez, Workers–
Appellants,

v.

**ST. JOSEPH HOSPITAL**, self-insured,
Wal–Mart Stores, Inc., and National Un-
ion Fire Insurance Company, Employ-
ers–Insurers–Appellees.

No. 23226.

Supreme Court of New Mexico.

July 22, 1996.

Rehearing Denied Dec. 2, 1996.

Lorenzo A. Chavez, Luis Quintana, Avelino V. Gutierrez, Albuquerque, for Appellants.

D. James Sorenson, P.C., D. James Sorenson, Albuquerque, Bradley & McCulloch, P.A., Robert A. Martin, Lisa T. Mack, Rosemary Dillon, Albuquerque, for Appellees.

Tom Udall, Attorney General, John H. Clough, Assistant Attorney General, Santa Fe, Robert M. Aurbach, General Counsel, Workers' Compensation Administration, Albuquerque, for Amicus Curiae Workers' Compensation Administration.

Leslie Brueckner, Gary Peller, Washington, DC, Daymon B. Ely, Albuquerque, Durkovich & Martinez, Stephen G. Durkovich, Albuquerque, Don D. Vigil, Albuquerque, for Amicus Curiae Trial Lawyers for Public Justice N.M. Trial Lawyers Association.

Butt, Thornton & Baehr, P.C., Emily A. Franke, David N. Whitham, Albuquerque, for Amicus Curiae N.M. Defense Lawyers Association.

Montgomery & Andrews, P.A., Gary Kilpatric, Carolyn Wolf, Santa Fe, Hall & Evans, L.L.C., Alan Epstein, Barbara Schuman Heckler, Denver, CO, for Amicus Curiae American Insurance Association and Business & Labor Workers' Compensation Coalition.

### OPINION

BACA, Chief Justice.

■ Appellants challenge the constitutionality of the New Mexico Workers' Compensation Act, NMSA 1978, §§ 52–1–1 to –70 (Repl.Pamp.1991 & Cum.Supp.1995) ("the Act"), under which each was denied the level of permanent partial disability benefits (PPD) she sought.[1] Each Appellant raises similar constitutional challenges to the Act. The Workers' Compensation Administration has no authority to determine the constitutionality of the Act, *Montez v. J & B Radiator, Inc.*, 108 N.M. 752, 754, 779 P.2d 129, 131 (Ct.App.), *cert. denied*, 108 N.M. 771, 779 P.2d 549 (1989); thus, Appellants brought their constitutional challenges before the Court of Appeals. The Court of Appeals consolidated the cases. There being questions under the New Mexico Constitution, and the questions being significant questions of law and of substantial public interest, the consolidated cases were certified to this Court pursuant to NMSA 1978, Section 34–5–14(B)(3) and (4) (Repl.Pamp.1990) (certification of cases to Supreme Court). We address three constitutional issues on appeal: (1) whether Section 52–1–24 ("Section 24"), which requires use of the American Medical Association Guides, American Medical Association, *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) [hereinafter "AMA Guide"], to evaluate impairment, embodies an unlawful delegation of legislative authority to a nongovernmental entity; (2) whether the Act is arbitrary and denies workers a meaningful hearing to address the unique aspects of their claim; and (3) whether the Legislature's adoption of the most recent edition of the AMA Guide to evaluate impairment denies workers equal protection in determining the existence or extent of disability. In addition to her constitutional challenges, Appellant Christine Rodriguez ("Rodriguez") contended that there was insufficient evidence to support the workers' compensation judge's finding regarding the date on which she reached maximum medical improvement (MMI)[2], and the value as-

---

1. Permanent partial disability "means a condition whereby a worker, by reason of injury arising out of and in the course of employment, suffers a permanent impairment." Section 52–1–26(B).

2. MMI is defined within the Act as "the date after which further recovery from or lasting im-

provement to an injury can no longer be reasonably anticipated based upon reasonable medical probability as determined by a health care provider." Section 52–1–24.1. Once a worker has achieved MMI, an evaluation of permanent impairment is performed based upon the AMA Guide, Section 52–1–24(A) (impairment; defini-

signed to her for residual physical capacity. We find all challenged portions of the Act constitutional and affirm the workers' compensation judges' determinations of the proper level of benefits available to these Appellants. As to Rodriguez's additional claim, we conclude that the workers' compensation judge's determinations were supported by substantial evidence.

2. This Court authorized the following organizations to submit amicus curiae briefs: the Workers' Compensation Administration; the American Insurance Association and the Business and Labor Workers' Compensation Coalition; the Trial Lawyers for Public Justice and the New Mexico Trial Lawyers Association; and the New Mexico Defense Lawyers Association.

## I.

3. Appellant Virginia Madrid ("Madrid") was employed as a staff nurse by Appellee St. Joseph Hospital when she sustained an injury to her back. She was assisting a patient who slipped from her grasp and began to fall. In an attempt to help the patient, Madrid was dragged to the floor along with the patient. Madrid underwent treatment for her injury and returned to what she described as light-duty work. With ongoing treatment Madrid reached MMI, which ended her eligibility for temporary disability benefits. She then received an impairment rating of zero percent from her medical care provider, which rendered her ineligible for further workers' compensation benefits. Nonetheless, Madrid alleged that she continued to feel constant back pain, and her doctor continued to restrict her from heavy lifting and twisting. Madrid concluded that she could no longer perform the duties of staff nurse. She resigned from employment with St. Joseph Hospital and began work at Belen Healthcare shortly thereafter. Belen Healthcare paid Madrid a salary equal to or greater than the salary she earned at St. Joseph Hospital.

4. Following her resignation from St. Joseph Hospital, Madrid filed a workers' compensation claim for PPD benefits. A media-

tion conference resulted in a recommendation that Madrid was ineligible for PPD benefits due to the lack of an impairment rating on which to calculate benefits. Madrid requested a formal hearing at which she challenged the Act's constitutionality. At the formal hearing, the judge denied Madrid benefits based on her zero percent impairment rating.

5. The second case concerned Rodriguez, who worked in the electronics department at Wal–Mart. She was responsible for stocking the display shelves and was injured while placing a television on a shelf. Rodriguez continued to work intermittently, while receiving treatment for her injuries. She continued to suffer from pain in her arm, shoulder, and back, which impaired her capacity to work. Rodriguez made a claim for PPD benefits. Her treating physician established that she had reached MMI with an impairment rating of five percent. Rodriguez felt that the measure of benefits to which she would be entitled based on these findings was below the proper level. Consequently she filed a complaint in which she challenged both the Act's constitutionality and the date on which she was deemed to have reached MMI. Mediation led to a formal hearing at which the workers' compensation judge found that Rodriguez had reached MMI at a later date than first noted, and assigned her a disability rating of nine percent. Appellants now appeal.

## II.

6. Appellants contest the mandatory use of the AMA Guide, alleging that the AMA Guide was not developed to measure a worker's disability or to determine the impact of an individual's impairment on his or her capacity to work. Rather, Appellants contend that the AMA Guide was developed solely to assist doctors in the rating of physical impairment, without regard to the impact of the particular impairment on the loss of work capacity. According to Appellants, the practical result of relying on the AMA Guide is that many permanently disabled workers are denied compensation because they do not

tion), and this impairment rating is used in calculating the extent of disability and any accom-

panying benefits eligibility. Section 52–1–26(C) (permanent partial disability).

suffer from an impairment recognized by the American Medical Association ("AMA"). Appellants also contend that use of the AMA Guide ties compensation to a standard that has no relationship to the actual occupational or vocational disability.

7. We first examine the process by which workers' compensation claims are evaluated. Compensable workplace injuries are divided into four basic categories: (1) temporary total disability; (2) temporary partial disability; (3) permanent total disability; and (4) permanent partial disability. Eligibility for the various temporary benefits provided under the Act ends at the date of MMI. Section 52–1–25. From this point forward, the worker is entitled to further benefits only if he or she can establish a permanent—either partial or total—disability. When a claim for PPD benefits has been filed, a medical professional must utilize the most recent version of the AMA Guide in evaluating whether the worker is physically impaired as a result of a work-related injury. Section 52–1–24(A) (impairment; definition); 1 Carlos G. Martinez, *New Mexico Workers' Compensation Manual* § 8.09, at 8–18 to –23 (1993) (determining permanent partial disability). This initial determination is based on a medical professional's examination of the worker's medical history, a clinical evaluation, treatment, testing, an evaluation of the stability of the medical condition, and other relevant medical information. AMA Guide, *supra*, at 7–10. The medical professional then applies this information to the AMA Guide criteria, making use of his or her experience, training, skill, and thoroughness in examining the worker to arrive at an impairment rating. AMA Guide, *supra*, § 1.3. If the worker has returned to work at wages equal to or higher than the worker's pre-injury wages, the impairment rating is used as the basis for determining benefits eligibility and for calculating those benefits. Section 52–1–26(D). If the worker is not able to return to work at a rate of pay equal to or higher than the pre-injury wages, the workers' compensation judge applies a statutory formula in order to determine the ap-

propriate level of workers' compensation benefits. Section 52–1–26.1. The formula incorporates the worker's impairment rating, age, education, and residual physical capacity [3] in order to arrive at a disability rating, which determines the level of benefits available. Section 52–1–26(C).

8. This complex evaluation scheme was designed to achieve the purpose for which workers' compensation was first enacted, which was to protect injured workers from becoming dependent on public welfare and to provide them with some financial security. *Wylie Corp. v. Mowrer,* 104 N.M. 751, 752, 726 P.2d 1381, 1382 (1986). The portion of the Act relevant to partial disability was intended to provide "every person who suffers a compensable injury with resulting permanent partial disability . . . with the opportunity to return to gainful employment as soon as possible with minimal dependence on compensation awards." Section 52–1–26(A).

9. The Legislature modified portions of the Act in 1990, 1990 N.M.Laws, ch. 2, § 53, in order to "assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers who are subject to the provisions of the Workers' Compensation Act." NMSA 1978, § 52–5–1 (Repl. Pamp.1991). One of the modifications intended to further these objectives was the required use of the AMA Guide in evaluating impairment. Section 52–1–24(A). Application of the AMA Guide is supposed to achieve objectivity and fairness in the disability determination process because the AMA Guide offers an objective method for evaluating the degree of permanent impairment. AMA Guide, *supra*, at.v. With these objectives in mind, we will examine the Act to ensure that its application does not offend the protections afforded by the New Mexico and United States Constitutions.

10. This Court presumes the Act is constitutional. *See, e.g., Espanola Hous. Auth. v. Atencio,* 90 N.M. 787, 788, 568 P.2d 1233, 1234 (1977) ("It is well settled that there is a presumption of the validity and

---

3. Residual physical capacity is the worker's physical capacity to perform the job following injury.

*Levario v. Ysidro Villareal Labor Agency,* 120 N.M. 734, 736, 906 P.2d 266, 268 (Ct.App.1995).

regularity of legislative enactments."). Absent proof beyond a reasonable doubt that the Legislature has enacted a statute which is unconstitutional, this Court will uphold the statute. *Id.* We will not question the wisdom, policy, or justness of legislation enacted by our Legislature. *Id.* The burden of establishing that the statute is invalid rests on the Appellants. *City of Albuquerque v. Jones,* 87 N.M. 486, 535 P.2d 1337 (1975).

### III.

### A.

11. Appellants ask that we resolve whether Section 24 of the Act constitutes an unconstitutional delegation of legislative authority by requiring the use of the most recent edition of the AMA Guide in evaluating impairment. Section 24 provides in pertinent part:

> A. "impairment" means an anatomical or functional abnormality existing after the date of maximum medical improvement as determined by a medically or scientifically demonstrable finding and based upon the most recent edition of the American medical association's [sic] guide to the evaluation of permanent impairment or comparable publications of the American medical association [sic].

Section 52–1–24. Appellants contend that the Legislature improperly delegated its lawmaking power by allowing the AMA, a nongovernmental entity, to establish and periodically change the sole determinative factor of a worker's right to PPD benefits. We do not find mandatory reference to the AMA Guide in determining impairment for purposes of workers' compensation claims to be a delegation of legislative authority to the American Medical Association.

12. At the outset we note that the impairment rating is not necessarily the sole determinative factor of a worker's right to PPD benefits. The impairment rating is the sole determinative factor in evaluating disability only where the worker has returned to work at the same or greater rate of pay than that earned prior to the injury. The Act is intended only to prevent the worker from becoming a public charge and to assist the worker in returning to work with minimal dependence on compensation awards. *Wylie,* 104 N.M. at 752–53, 726 P.2d at 1382–83. In those instances where wages decrease as a result of a work-related disability, the impairment rating is not the sole determinative factor of a worker's right to workers' compensation benefits.

13. The Legislature is generally prohibited from delegating legislative powers. *State v. Spears,* 57 N.M. 400, 405, 259 P.2d 356, 359 (1953). However, this rule is not absolute. Our Legislature has the power to statutorily authorize an agency to formulate rules and regulations so long as it does not give the outside entity the power to determine what the law will be. *Id.* at 406, 259 P.2d at 360 ("If the regulations or actions of an official or board authorized by statute do not in effect determine what the law shall be ... such regulation or action is administrative, and not legislative, in its nature and effect.").

14. When a legislature adopts the standards of a private organization into a statutory scheme, as did our Legislature in Section 24, the incorporation is not always a delegation of legislative power. We find no delegation of legislative power in Section 24. Although the issue is one of first impression in New Mexico, many jurisdictions have articulated compelling rationales for allowing adoption of a private organization's standards into a statutory scheme without finding a delegation of legislative authority. This is true even when the standards are subject to periodic revision by the private entity.

15. Courts in other jurisdictions which have addressed the adoption of private standards by their legislatures have articulated many reasons for allowing such adoptions. As the Supreme Court of Maryland noted:

> [C]ourts have sometimes upheld legislative adoption of private organizations' standards which are periodically subject to revision, in limited circumstances such as where the standards are issued by a well-recognized, independent authority, and provide guidance on technical and complex matters within the entity's area of expertise.

*Board of Trustees of the Employees' Retirement Sys. of the City of Baltimore v. Mayor & City Council of Baltimore,* 317 Md. 72, 562 A.2d 720, 731 (1989). A Wisconsin case, *State v. Wakeen,* 263 Wis. 401, 57 N.W.2d 364 (1953), provides a clear example of a statute that effectively incorporates the standards developed by a private organization without implicating legislative delegation. In *Wakeen,* the Wisconsin Supreme Court upheld a statute which defined the word "drug" by referencing publications of " 'the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary.' " *Id.,* 57 N.W.2d at 365 (quoting Wis.Stat. § 151.06(1)). These publications are periodically updated to include new scientific discoveries made by eminent professionals interested in maintaining high standards in science. *Id.* The court found no delegation of legislative power in the statutory reference to the mutable standards of private entities. *Id.* at 369. The decision rested in part on the fact that the publications were not made in response to the statutory reference. *Id.* The eminence of the compilers of these publications further legitimized adoption of the publications by the Legislature. *Id.* Furthermore, the court noted that the United States Congress and many state legislatures have adopted the same standards. *Id.*

15. Some jurisdictions limit their legislature's authority to reference periodically updated standards, requiring that the arbitrator have a certain amount of discretion in adopting or applying the periodically updated standards. *See, e.g., City of Baltimore,* 562 A.2d at 732. A Maryland court upheld a statute which referenced a private entity's periodically updated list. *Id.* The reference to the list was not a delegation of legislative authority because it was merely advisory, and the agency was free to disregard the list. *Id.* The court concluded that the agency was ultimately responsible for making the relevant determination with the option of rejecting the proposals of the private entity. *Id.*

16. Moreover, practical necessity may require statutory reference to the standards of private organizations. The Minnesota Supreme Court, in adopting American Bar Association accreditation determinations for evaluation of applicants for admission to the Bar, noted:

> We have neither the time nor the expertise to investigate individually the special training of an applicant or the program offered by specific law schools, and any attempt by us to do so would be inefficient and chaotic. Thus, it does not offend the constitution for us to decide to utilize instead standards developed by a nongovernmental body with expertise in the area....

*In re Hansen,* 275 N.W.2d 790, 796–97 (Minn.1978), *appeal dismissed,* 441 U.S. 938, 99 S.Ct. 2154, 60 L.Ed.2d 1040 (1979). Legislatures encounter resource limitations, as well as other practical obstacles, which render them incapable of developing their own standards. *See, e.g., Lucas v. Maine Comm'n of Pharmacy,* 472 A.2d 904, 911 (Me.1984) (concluding that "[a] single small state such as Maine does not have available the resources to conduct an ongoing accreditation program."). Furthermore, the technical sophistication required to develop standards in certain fields has a prohibitory impact on legislative development of such standards. *See, e.g., id.* (finding legislature did not have expertise to develop standards for evaluating medical professionals, and approving adoption of standards created by private entity which utilized eminent professionals interested in maintaining high scientific standards).

17. Finally, where a private organization's standards have significance independent of a legislative enactment, they may be incorporated into a statutory scheme without violating constitutional restrictions on delegation of legislative powers. A private entity's standards cannot be construed as a deliberate law-making act when their development of the standards is guided by objectives unrelated to the statute in which they function. *Lucas,* 472 A.2d at 911 (quoting Jaffe, *Law Making by Private Groups,* 51 Harv.L.Rev. 201, 231 (1936)). In *Lucas,* the Supreme Court of Maine applied this principle to uphold a statute requiring that pharmacists prove that they have received a degree from a school accredited by the American Council on Pharmaceutical Education before working

in Maine. *Id.* at 909 ("'[S]tatutes whose operation depends upon private action which is taken for purposes which are independent of the statute' usually pass constitutional muster.") (quoting 1 Kenneth C. Davis, *Administrative Law Treatise* § 3.12, at 196 (2d ed. 1978)). The American Council on Pharmaceutical Education evaluates schools for numerous purposes unrelated to the statutory purpose. *Id.* Based on that principle, the court concluded that the statutory requirement of a degree from a pharmacy school accredited by the American Council on Pharmaceutical Education did not constitute an unlawful delegation of legislative authority. *Id.* at 911. Courts have repeatedly reached the same conclusion in cases involving incorporation of the accreditation determinations of private entities. *See, e.g., Hansen,* 275 N.W.2d at 796 (statute requiring proof of graduation from American Bar Association-accredited law school was intended to achieve a standard of educational excellence rather than to delegate legislative authority to the American Bar Association); *Colorado Polytechnic College v. State Bd. for Community Colleges & Occupational Educ.,* 173 Colo. 39, 476 P.2d 38, 40 (1970) (upholding constitutionality of statute which uses criteria established by nationally-recognized accrediting associations).

18. All of the aforementioned grounds for incorporating the standards of a private entity without finding a delegation of legislative authority are applicable to Section 24, which references the AMA Guide. Section 24 has incorporated the standards of a well-recognized, independent authority, in order to provide guidance to medical professionals and workers' compensation claims adjudicators on the complex issue of impairment. The AMA Guide was specifically developed to "bring greater objectivity to estimating the degree of long-standing or 'permanent impairment.'" AMA Guide, *supra,* at v. In

compiling the AMA Guide, the American Medical Association obtained the assistance of experts in the complex area of permanent impairment, calling on "well-qualified individuals" and "physicians from all the state medical societies and medical specialty societies." *Id.* Many other states use the AMA Guide, or a similar rating method, to evaluate impairment for purposes of workers' compensation benefits.[4]

▮▮▮▮▮ 19. Contrary to Appellants' argument, use of the AMA Guide as prescribed by Section 24 does allow for an element of discretion as specifically explained by the AMA Guide:

> [N]o formula is known by which knowledge about a medical condition can be combined with knowledge about other facts to calculate the percentage by which the employee's industrial use of the body is impaired. [Therefore, the Workers' Compensation] Commission also must consider the nature of the injury and the employee's occupation, experience, training, and age [to] award proportional compensation.

AMA Guide, *supra,* § 1.4. The AMA Guide is a general framework, requiring flexibility in its application. While the AMA Guide was intended to help standardize the evaluation of a worker's impairment, it was not intended to establish a rigid formula to be followed in determining the percentage of a worker's impairment. Where evidence is conflicting, the ultimate decision concerning the degree of a worker's impairment and disability rests with the workers' compensation judge. Furthermore, where the AMA Guide is an inadequate reference, the statute explicitly allows for reference to other AMA publications. Section 52–1–24. Section 24 clearly has a discretionary component.

20. It is impractical to expect our Legislature to establish standards for evaluating

---

4. *See* Alaska Stat. § 23.30.190 (1990); Ariz.Rev. Stat.Ann. § 23–1065(C) (1995); Colo.Rev.Stat. § 8–42–107(8)(c) (Cum.Supp.1995); Ga.Code Ann. § 34–9–1(5) (1994); Ky.Rev.Stat.Ann. § 342.730(1)(c) (Michie/Bobbs-Merrill Cum. Supp.1994); La.Rev.Stat.Ann. § 23–1221(4)(q) (West Cum.Supp.1996); Me.Rev.Stat.Ann. tit. 39–A, § 153(8) (West Cum.Supp.1996); Mass. Ann.Laws ch. 152, § 35 (Law. Co-op Cum.Supp. 1996); Mont.Code Ann. § 39–71–703(1)(b)(ii) (1995); Nev.Rev.Stat. § 616C.490(2) (1995); N.H.Rev.Stat.Ann. § 281–A:31–a (Cum.Supp. 1995); N.D.Cent.Code § 65–01–02(26) (1995); Okla.Stat.Ann. tit. 85, § 3(11) (West 1992); R.I.Gen.Laws § 28–33–18(c) (1995); S.D. Codified Laws Ann. § 62–1–1.2 (Supp.1995); Tenn. Code Ann. § 50–6–241(a)(1) (Supp.1995).

physical impairment in workers' compensation claims. The New Mexico Legislature could have concluded that it lacked the resources to develop independent standards, opting instead to utilize the standards established by a highly respected entity that possessed the expertise for such an undertaking. Prohibiting the Legislature from adopting the standards developed by experts within a rapidly changing medical specialty would obstruct the Workers' Compensation Administration's efforts to provide accurate evaluations of impairment.

21. In addition, new developments in medical science relevant to evaluating impairments demand periodic modifications of the standard adopted by Section 24. The AMA Guide is periodically updated to encompass these new developments. AMA Guide, *supra*, at 1. Periodic revisions of the standard will not transform an otherwise constitutional and non-delegatory statutory provision into an unconstitutional delegation of legislative power. Where a standard is periodically updated because of new scientific developments recognized by eminent professionals interested in maintaining high standards in science, the standard may still be adopted by the Legislature. *See, e.g., Wakeen,* 57 N.W.2d at 369.

22. The AMA Guide was developed, and is utilized, for many purposes beyond evaluation of impairment within a workers' compensation claim. While the AMA Guide has become an important tool for evaluating impairment for workers' compensation claims, it is also utilized in adjudicating "Social Security Administration cases, and other types of cases." AMA Guide, *supra,* at 1. Furthermore, the AMA Guide is "useful anywhere when questions arise about people's physical and mental functioning and capabilities." *Id.* Clearly the AMA has developed a standard which has independent significance beyond adjudication of workers' compensation claims. The New Mexico Constitution does not prohibit the Legislature from availing itself of the independent work of a private organization.

23. In light of all the relevant considerations—the eminence of the medical professionals who compile the AMA Guide, the complexity of the issue of impairment, the number of jurisdictions that have adopted the AMA Guide or similar publications, the practical necessity of adopting this mutable standard, the discretionary component of using the AMA Guide, and the significance of the AMA Guide outside of the statutory reference—we find no delegation of legislative authority in Section 24.

### B.

24. We are also called upon to determine whether the Act violates the Due Process Clause of the New Mexico Constitution. Appellants assert that the scheme utilized to determine eligibility for workers' compensation benefits is arbitrary and capricious, and denies workers an opportunity for a fair and impartial hearing which contemplates the individual circumstances of each case. For the following reasons, we conclude that the Act does not violate due process.

25. Article II, Section 18 of the New Mexico Constitution prohibits the denial of life, liberty or property without due process of law. Due process involves both substantive and procedural considerations. Substantive due process protects individuals from arbitrary and discriminatory laws, requiring that every law further a proper legislative purpose. *Holford v. The Regents of the Univ. of Cal., Los Alamos Nat'l Lab.,* 110 N.M. 366, 368, 796 P.2d 259, 261 (Ct.App.), *cert. denied,* 110 N.M. 330, 795 P.2d 1022 (1990). Procedural due process requires the government to give notice and an opportunity to be heard before depriving an individual of liberty or property. *Rutherford v. City of Albuquerque,* 113 N.M. 573, 575, 829 P.2d 652, 654 (1992). We interpret Appellants' complaint to address issues of substantive due process. Substantive due process requires a determination of whether the Act bears a rational relationship to a legitimate legislative goal or purpose. *See, e.g., Garcia v. Village of Tijeras,* 108 N.M. 116, 119, 767 P.2d 355, 358 (Ct.App.) ("In order to withstand scrutiny under United States Constitution and similar provisions in our state Constitution, N.M. Const. art. II, §§ 4 & 18, a statute or ordinance must bear a rational

relationship to a legitimate legislative goal or purpose."), *cert. denied,* 107 N.M. 785, 765 P.2d 758 (1988).

26. Appellants have failed to establish that use of the AMA Guide and predetermined modifiers in evaluating disability is arbitrary and lacks some rational relationship to a legitimate legislative purpose. *Id.* Appellants argue that the Act produces arbitrary disability determinations because, unlike the previous versions of the Act, it does not permit the workers' compensation judge to exercise discretion by applying extenuating factors to determine disability. *See, e.g., Anaya v. New Mexico Steel Erectors, Inc.,* 94 N.M. 370, 373, 610 P.2d 1199, 1202 (1980) (stating that disability determination analyzed percentage claimant was unable to perform previous job, taking into consideration " 'age, education, training, experience and physical condition and previous work experience' " with emphasis on importance of trial judge's discretion). This Court will not address which version of the Act is superior; rather, we consider whether the current version of the Act is arbitrary.

27. Contrary to Appellants' assertions, the current version of the Act requires the workers' compensation judge to consider the unique facts of each worker's claim and is not arbitrary. As discussed earlier, the AMA Guide requires medical professionals to incorporate the unique circumstances of each claim in order to arrive at an impairment rating. Additionally, the Act itself explicitly states that any finding of impairment may be modified by the claimant's age, education, and physical capacity. *See* §§ 52–1–26, –26.4. It is evident that the AMA Guide is what it purports to be—a guideline to be used in conjunction with the expertise of the medical professional in order to arrive at a percentage of impairment based on the unique circumstances of each claim. *See* AMA Guide, *supra,* § 1.3. Therefore, the amended version of the Act incorporates discretionary factors to determine disability and does not produce arbitrary disability awards.

28. Appellants further argue that the Act is arbitrary because some conditions which result in impairment are not contained in the AMA Guide. *See, e.g., Sutton v. Quality*

*Furniture Co.,* 191 Ga.App. 279, 381 S.E.2d 389, 389–90 (1989) (illustrating that some impairments, such as chronic pain, are not addressed by the AMA Guide), *cert. denied* (May 11, 1989). This argument fails because other comparable AMA publications may be utilized to evaluate impairment when the AMA Guide is insufficient. *See* § 52–1–24(A). Similarly, other jurisdictions allow workers' compensation judges to consider generally-accepted standards in awarding workers' compensation benefits when the injury at issue is not covered by the AMA Guide. *See, e.g., Dayron Corp. v. Morehead,* 509 So.2d 930, 931 (Fla.1987) ("When an injury is not covered by the AMA Guides, it is permissible to rely upon medical testimony of permanent impairment based upon other generally accepted medical standards."); *Slover Masonry, Inc. v. Industrial Comm'n,* 158 Ariz. 131, 135, 761 P.2d 1035, 1039 (1988) (noting that where the AMA Guide is inadequate, the administrative law judge may turn to other factors in assessing impairment). Under the Act, application of the AMA Guide in evaluating impairment does not preclude use of other AMA publications in evaluating impairment. Further, the AMA Guide explicitly provides that it "does not and cannot provide answers about every type and degree of impairment." AMA Guide, *supra,* § 1.3. It is a "guideline to be used in conjunction with the expertise of the medical profession." *Id.* While the Legislature intended to preclude arbitrary determinations, it did not intend to exclude determinations by medical professionals in situations not covered by the Guide. Thus, the Act does not produce an arbitrary determination of disability.

29. Finally, we disagree with Appellants' assertion that the Act provides insufficient guidance in evaluating impairment for purposes of determining disability. New Mexico has previously determined a worker's disability based on capacity to perform work. *See, e.g., Medina v. Zia Co.,* 88 N.M. 615, 617, 544 P.2d 1180, 1182 (Ct.App.1975) ("[T]he primary test for disability is the capacity to perform work."), *cert. denied,* 89 N.M. 6, 546 P.2d 71 (1976). Currently, the Act utilizes loss of earning capacity in evaluating disability. *See* § 52–1–26(D) ("If, on or after the

date of maximum medical improvement, an injured worker returns to work at a wage equal to or greater than the worker's pre-injury wage, the worker's permanent partial disability rating shall be equal to his impairment"). Appellants contend that this change in the Act results in disability determinations which are unrelated to capacity to perform work. Thus, Appellants argue that the Act unconstitutionally denies workers their right to a fair and impartial determination of disability based on the extent of incapacity to perform past, relevant work.

■ 30. Due process does not require the Legislature to maintain the same compensation scheme indefinitely. Appellants have no constitutional right to the previously-utilized definition of "disability." The Act, as well as the term "disability" as used within the Act, are sui generis. *See, e.g., Consolidated Freightways Inc. v. Subsequent Injury Fund,* 110 N.M. 201, 204, 793 P.2d 1354, 1357 (Ct.App.1990) (recognizing the sui generis nature of the Act). The term "partial disability" is defined within the Act at Section 52–1–26(B) and does not refer to incapacity to perform past, relevant work. The Act defines disability, provides adequate guidelines for determining eligibility for workers' compensation benefits, and ensures that workers receive a fair and impartial determination of disability.

■ 31. We conclude that the Act is not arbitrary and ensures a fair and impartial determination of disability. Thus, the Act is not violative of substantive due process.

## C.

32. Next we are asked to address whether the Act violates equal protection. Appellants contend that mandatory application of the most recent edition of the AMA Guide in evaluating impairment results in similarly-situated workers receiving different impairment ratings based solely on when they obtain MMI. We find no equal protection violations resulting from mandatory application of the most recent edition of the AMA Guide.

33. The Act specifies that, upon achieving MMI, an evaluation of impairment must be completed based on the most recent version of the AMA Guide. *See* § 52–1–24(A). This impairment rating is used in evaluating eligibility for workers' compensation benefits and the magnitude of those benefits. *See* § 52–1–26. Appellants object to the fact that workers suffering identical injuries on the same day, and achieving MMI on different dates, could receive an evaluation of impairment based on different versions of the AMA Guide. The use of different versions of the AMA Guide could result in a benefit award for one of the workers greater than that given to another. Appellants conclude that the scheme allows an unreasonable and arbitrary classification to effect workers' compensation awards.

■ 34. The equal protection clauses found in the United States and New Mexico Constitutions prohibit the government from creating statutory classifications that are unreasonable, unrelated to a legitimate statutory purpose, or are not based on real differences. U.S. Const. amend. XIV; N.M. Const. art. II, § 18; *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982) ("In applying the Equal Protection Clause to most forms of state action, we thus seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose."); *Thompson v. McKinley County,* 112 N.M. 425, 429–30, 816 P.2d 494, 498–99 (1991) (Equal Protection Clauses of state and federal constitutions prohibit statutes which "create[ ] classifications that are unreasonable, that do not relate to the statutory purpose, and that are not based on real differences.").

35. As a threshold matter, we must decide whether the legislation at issue results in dissimilar treatment of similarly-situated individuals. *Montez,* 108 N.M. at 755, 779 P.2d at 132 (beginning analysis with determination that workers' compensation statute did not create two separate classifications subject to different treatment). Appellants incorrectly conclude that workers suffering identical injuries on the same day are similarly situated. Where one worker requires substantial recovery time before reaching MMI, and another worker requires minimal recovery time before reaching MMI, the workers are not similarly situated. Catego-

**536**

rizing workers according to the date of MMI ensures that similarly-injured workers who achieve MMI on the same date will be evaluated for impairment under the same version of the AMA Guide. The time of injury alone is insufficient to determine whether workers are similarly situated.

36. The Act insures that every worker will be evaluated for impairment and will receive benefits based on current medical advances. To require a worker to undergo an impairment evaluation based on outdated medical information, simply because the worker was injured before the release of more up-to-date medical information, would deprive the late-recovering worker of the opportunity to be evaluated according to current medical developments. Had the Act failed to provide for application of only the most recent medical developments, it could have resulted in disparate treatment of similarly-situated workers. However, as drafted, the Act ensures that each worker will receive an impairment rating and subsequent disability rating based on current medical developments.

37. We conclude that the legislation at issue is rationally related to its purpose and does not result in dissimilar treatment of similarly-situated individuals. Thus, we find that mandatory application of the most recent edition of the AMA Guide in evaluating impairment does not violate equal protection.

**D.**

38. Having determined that the Act is constitutionally sound with respect to the issues raised by Appellants, we turn to Rodriguez's contention that the workers' compensation judge erred in concluding that she achieved MMI on April 6, 1993. In reviewing a workers' compensation decision we evaluate whether, based on the whole record, the decision is supported by substantial evidence. *Tallman v. ABF*, 108 N.M. 124, 130, 767 P.2d 363, 369 (Ct.App.), *cert. denied*, 109 N.M. 33, 781 P.2d 305 (1988). We must evaluate whether there is sufficient evidence "for a reasonable mind to accept as adequate to support the conclusion reached." *Id.* at 128, 767 P.2d at 367.

39. MMI is "the date after which further recovery from or lasting improvement to an injury can no longer be reasonably anticipated based upon reasonable medical probability as determined by . . . health care provider[s]." Section 52–1–24.1. One physician testified that MMI was achieved on April 6, 1993, while another physician indicated that MMI was attained on July 21, 1994. Both physicians agreed that Rodriguez suffers from myofacial pain which is chronic and incapable of demonstration through objective findings. The workers' compensation judge was responsible for resolving any conflicts in medical testimony as to the date of MMI. *Sanchez v. Molycorp, Inc.*, 103 N.M. 148, 152, 703 P.2d 925, 929 (Ct.App.1985). Rodriguez currently has the same diagnosis and symptoms as were present on April 6, 1993. The evidence shows that a reasonable mind could find that Rodriguez reached MMI on April 6, 1993. *See Tallman*, 108 N.M. at 128, 767 P.2d at 367. There is substantial evidence to support the judge's determination that Rodriguez reached MMI on April 6, 1993.

40. Additionally, Rodriguez contends that the workers' compensation judge lacked substantial evidence to support the assignment of a value of one as her residual physical capacity, asserting that the value should have been two. Residual physical capacity is a value ranging from one to eight, which is assigned to a disabled worker based on the difference between the worker's usual and customary work and the worker's residual physical capacity. *See* § 52–1–26.4. Rodriguez contests the residual physical capacity value assigned to her based on the fact that before she was injured she was able to lift from forty to sixty pounds at work, while after she was injured she was restricted to lifting only thirty pounds. Thus, Rodriguez could lift medium weights prior to injury and only light weights after the injury. *Id.* Rodriguez argues that the workers' compensation judge incorrectly utilized the medium lifting capacity value of one in determining disability rather than the light lifting capacity value of two which should have been used. Had the workers' compensation judge applied a light lifting capacity value, Rodriguez

would have received a disability rating of thirteen percent rather than the nine percent disability rating assigned to her.

 41. Rodriguez admitted that she generally only lifted light objects prior to her injury. In order to obtain the light lifting designation, Rodriguez had the burden of proving that she was unable to lift up to twenty-five pounds frequently. *Gallegos v. City of Albuquerque*, 115 N.M. 461, 462, 853 P.2d 163, 164 (Ct.App.) (holding that the burden is on the worker to establish entitlement to benefits), *cert. denied*, 115 N.M. 535, 854 P.2d 362 (1993). Rodriguez failed to satisfy this burden. A review of all of the evidence shows that a reasonable mind could find that Rodriguez's residual physical capacity is one and that her permanent partial disability is limited to nine percent.

### IV.

42. In sum we hold that all challenged portions of the Act are constitutionally sound. We further hold that the workers' compensation judge's findings as to the date on which Rodriguez reached MMI and the value assigned to her for residual physical capacity are supported by substantial evidence. Thus, we affirm the worker's compensation judges' determination of the proper level of benefits available to both Appellants.

IT IS SO ORDERED.

MINZNER, J., and LOUIS P. McDONALD, District Judge (Sitting by designation), concur.