**Certiorari Granted, March 1, 2013, No. 33,993**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-036**

**Filing Date: December 13, 2012**

**Docket No. 31,438**

**SHERRIE FOWLER,**

> **Worker-Appellee,**

**v.**

**VISTA CARE and
AMERICAN HOME INSURANCE COMPANY,**

> **Employer/Insurer-Appellants.**

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Victor S. Lopez, Workers' Compensation Judge**

Dunn Law Offices
Rod Dunn
Albuquerque, NM

for Appellee

Butt Thornton & Baehr PC
Emily A. Franke
David N. Whitham
Albuquerque, NM

for Appellants

**OPINION**

**WECHSLER, Judge.**

**{1}**     Vista Care and American Home Insurance Co. (Vista Care) appeal from a compensation order entered in the Workers' Compensation Administration (WCA) awarding Sherrie Fowler (Worker) temporary total disability benefits. We consider various provisions

1

of the Workers' Compensation Act, NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2007), in determining whether (1) temporary total disability benefits are subject to a durational limit, (2) a previous determination that a worker is at maximum medical improvement precludes a finding that the worker was no longer at maximum medical improvement at a later date, and (3) Vista Care is entitled to a credit against the temporary total disability benefits for previously paid lump sum payments for future permanent partial disability benefits.  We hold that (1) temporary total disability benefits are subject to the 700-week durational limit found in Section 52-1-47(A); (2) the Workers' Compensation Judge (WCJ) did not err in concluding that Worker was not at maximum medical improvement on March 14, 2007, despite a previous finding of maximum medical improvement; and (3) on remand, the WCJ should consider how the 700-week limitation period affects the application of any potential credit for lump sum advances of permanent partial disability benefits.  Accordingly, we reverse in part and affirm in part, and we remand to the WCA for further proceedings consistent with this opinion.

**BACKGROUND**

**{2}**     On April 7, 2003, Worker suffered a back injury arising out of, and occurring in the course of, her employment with Vista Care.  As a result of her injury, Worker underwent a spinal fusion in October 2003.  Thereafter, Worker continued to receive medical care, including multiple spinal surgeries.  On January 11, 2006, Dr. James Thomas found that Worker had reached maximum medical improvement.  As a result, Worker filed a petition for a lump sum payment of permanent partial disability benefits for payment of debt, pursuant to NMSA 1978, Section 52-5-12(C) (2009).  The WCJ granted the petition on April 27, 2006, finding that Worker had reached maximum medical improvement prior to April 27, 2006.

**{3}**     Worker continued to receive treatment on her injured back and, on February 7, 2007, Dr. Andrew Cash examined Worker.  Dr. Cash's evaluation revealed that Worker suffered from an adjacent level breakdown and stenosis and recommended that Worker undergo an extension of the previous fusion with decompression.  Worker saw Dr. Cash again on March 14, 2007, and Dr. Cash recommended an anterior-posterior lumbar fusion of L3-4.  After the parties disagreed whether the treatment suggested by Dr. Cash related to the original injury, Dr. Jose Reyna provided an independent medical evaluation on October 22, 2009, and concluded that the new injury related to the original injury and that Worker would benefit from the additional treatment suggested by Dr. Cash.  Worker underwent the surgery on July 13, 2010.  The parties have stipulated that Worker has yet to reach maximum medical improvement following the July 13, 2010 surgery.

**{4}**     In the compensation order entered on June 30, 2011 that is the subject of this appeal, the WCJ concluded that Worker was no longer at maximum medical improvement as of March 14, 2007.  The WCJ awarded temporary total disability to Worker beginning March 14, 2007, the date at which the WCJ determined that Worker was no longer at maximum medical improvement, through the date Worker reaches maximum medical improvement

2

from the July 13, 2010 surgery.  The WCJ further concluded that the temporary total disability benefits were not subject to the 500- or 700-week durational limit found in Section 52-1-42(A), and, therefore, Worker could be paid benefits for an indefinite period of time. Finally, the WCJ concluded that Vista Care was not entitled to a credit for the lump sum advances of permanent partial disability benefits to apply to the temporary total disability benefits it awarded.

**{5}**     On appeal, Vista Care argues that the WCJ (1) erred in holding that temporary total disability benefits are not subject to the 500- or 700-week limit in Section 52-1-42(A) or the 700-week limit found in Section 52-1-47(A) and can potentially be payable for Worker's lifetime; (2) erred in concluding that Worker was no longer at maximum medical improvement as of March 14, 2007, despite finding that Worker was at maximum medical improvement on January 11, 2006; and (3) abused his discretion in holding that Vista Care is not entitled to a credit for the lump sum advances of future payments for permanent partial disability benefits when applied to the additional temporary total disability benefits.

**STANDARD OF REVIEW**

**{6}**     "All workers' compensation cases are reviewed under a whole record standard of review." *Moya v. City of Albuquerque*, 2008-NMSC-004, ¶ 6, 143 N.M. 258, 175 P.3d 926. When our review consists of reviewing a "WCJ's interpretation of statutory requirements, we apply a de novo standard of review." *DeWitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 14, 146 N.M. 453, 212 P.3d 341.  "We look first to the plain meaning of the statute's words, and we construe the provisions of the [Workers' Compensation] Act together to produce a harmonious whole.  After we determine the meaning of the statutes, we review the whole record to determine whether the WCJ's findings and award are supported by substantial evidence." *Id.* (internal quotation marks and citation omitted).  "When an agency that is governed by a particular statute construes or applies that statute, the court will begin by according some deference to the agency's interpretation." *Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 120 N.M. 579, 583, 904 P.2d 28, 32 (1995). However, we are not bound by the agency's interpretation and may substitute our "own independent judgment for that of the agency because it is the function of the courts to interpret the law." *Id.*

**TEMPORARY TOTAL DISABILITY BENEFIT DURATION LIMITS**

**{7}**     As pertinent to this appeal, the Workers' Compensation Act provides for compensation benefits for permanent partial disability in Section 52-1-42 and for total disability in Section 52-1-41.  Both sections contain limits on the duration of the benefits.

**{8}**     In relevant part, Section 52-1-42(A) states that:

> For permanent partial disability . . . [t]he duration of partial disability benefits shall depend upon the extent and nature of the partial disability,

3

subject to the following:

> (1) where the worker's percentage of disability is equal to or greater than eighty, the maximum period is seven hundred weeks;

> (2) where the worker's percentage of disability is less than eighty, the maximum period is five hundred weeks[.]

Section 52-1-41(A) provides that, with exceptions that are not relevant to this appeal, for total disability, a "worker shall receive compensation benefits for the remainder of his life."

**{9}** In addition to these limitation provisions stated together with specific types of benefits, the Workers' Compensation Act contains a general provision concerning the limitation of compensation benefits. Section 52-1-47 provides in relevant part

> except for provision of lifetime benefits for total disability awarded pursuant to Section 52-1-41 . . . :

> A. compensation benefits for any combination of disabilities or any combination of disabilities and death shall not be payable for a period in excess of seven hundred weeks[.]

**{10}** The WCJ relied on Section 52-1-41(A) for the proposition that the temporary total disability benefits are potentially subject to payment over Worker's lifetime. The WCJ determined that Section 52-1-41(A) clearly and unambiguously applies to both permanent and temporary "total disability." In the WCJ's view, the "generic" term "total disability" encompasses both "the temporary and permanent components of the category."

**{11}** In its entirety, Section 52-1-41(A) provides:

> For total disability, the worker shall receive, during the period of that disability, sixty-six and two-thirds percent of his average weekly wage, and not to exceed a maximum compensation of eighty-five percent of the average weekly wage in the state, a week, effective July 1, 1987 through December 31, 1999, and thereafter not to exceed a maximum compensation of one hundred percent of the average weekly wage in the state, a week; and to be not less than a minimum compensation of thirty-six dollars ($36.00) a week. Except as provided in Subsections B and C of this section, the worker shall receive compensation benefits for the remainder of his life.

**{12}** The first sentence of Section 52-1-41(A) establishes the formula to set the amount of compensation benefits that a worker may receive for total disability "*during the period of that disability.*" (Emphasis added.) The formula is used to calculate temporary total disability as well as permanent total disability benefits. *Cf. Breen v. Carlsbad Mun. Sch.*,

4

2005-NMSC-028, ¶ 1, 138 N.M. 331, 120 P.3d 413 (reviewing a case in which the worker received benefits under Section 52-1-41(A) for an injury resulting in a temporary total disability). By the express language of the statute, it applies only for benefits during the period of the disability. Section 52-1-41(A). The second sentence, on the other hand, states that, with exceptions for mental impairment and death, the worker is entitled to receive compensation benefits "for the remainder of his life." Section 52-1-41(A). Because this sentence is contained in Section 52-1-41(A) that begins "[f]or total disability," we presume that it relates to "total disability" and means that a worker shall receive compensation benefits for total disability for the remainder of the worker's life. *See Reule Sun Corp. v. Valles*, 2010-NMSC-004, ¶ 30, 147 N.M. 512, 226 P.3d 611 (stating that the placement of language at the beginning of a clause evinces legislative intent that the clause is meant to apply to the statute in whole). Nothing in Section 52-1-41(A) explains the connection between a worker's entitlement to receive the compensation benefits calculated in the first sentence of Section 52-1-41(A) for the period of the total disability and the worker's entitlement in the second sentence to receive compensation benefits for a total disability for the remainder of the worker's life. The language providing "benefits for the remainder of his life" in the second sentence is inconsistent with temporary total disability, which by definition is temporary and contemplates a worker reaching maximum medical improvement and returning to work. *See* § 52-1-25.1(A), (B); *see also Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, ¶ 7, 122 N.M. 524, 928 P.2d 250 ("Eligibility for the various temporary benefits provided under the Act ends at the date of [maximum medical improvement]."). Due to this ambiguity, we focus our construction of Section 52-1-41(A) outside the plain meaning, focusing on the purpose of the Workers' Compensation Act. *See T-N-T Taxi, Ltd. v. N.M. Pub. Regulation Comm'n*, 2006-NMSC-016, ¶ 5, 139 N.M. 550, 135 P.3d 814 ("[S]tatutes are given effect as written without room for construction unless the language is doubtful, ambiguous, or adherence to the literal use of the words would lead to injustice, absurdity or contradiction, in which case the statute is to be construed according to its obvious purpose.").

**{13}** We interpret statutes to fulfill the intent of the Legislature. *Vescio v. Wolf*, 2009-NMCA-129, ¶ 13, 147 N.M. 374, 223 P.3d 371. By enacting the Workers' Compensation Act, the Legislature intended "to protect injured workers from becoming dependent on public welfare and to provide them with some financial security." *Madrid*, 1996-NMSC-064, ¶ 8. To achieve this purpose, the Workers' Compensation Act sets forth grades of disability. Thus, a permanent total disability is either (1) the permanent and total loss or loss of use of both hands, arms, feet, legs, or eyes, or any two of them, or (2) a traumatic brain injury causing a certain degree of permanent impairment. Section 52-1-25. A permanent partial disability is a permanent impairment. Section 52-1-26(B). Further, workers with a compensable permanent partial disability "should be provided with the opportunity to return to gainful employment as soon as possible with minimal dependence on compensation awards." Section 52-1-26(A).

**{14}** The Workers' Compensation Act therefore draws a sharp distinction between permanent total disability and permanent partial disability. It does not contemplate that

workers suffering a compensable permanent total disability must return to work. To this end, workers with a permanent total disability receive lifetime compensation benefits. Section 52-1-41(A). A permanent partial disability, on the other hand, justifies only the maximum of 500 or 700 weeks of compensation benefits in accordance with the legislative purpose of minimal dependence on compensation awards. Section 52-1-42(A)(1), (2).

{15}    In addition, the Workers' Compensation Act ties a worker's entitlement to permanent partial disability benefits and temporary total disability benefits to the worker's achieving maximum medical improvement. Section 52-1-24(A) defines "impairment" as "an anatomical or functional abnormality existing after the date of maximum medical improvement." Further, temporary total disability is defined in relation to maximum medical improvement. It is "the inability of a worker, by reason of accidental injury arising out of and in the course of the worker's employment, to perform the duties of that employment prior to the date of the worker's maximum medical improvement." Section 52-1-25.1(A). A worker is entitled to receive temporary total disability benefits if the worker is released to work prior to reaching maximum medical improvement and returns to work at less than the worker's pre-injury wage. Section 52-1-25.1(C).

{16}    This legislative scheme of the Workers' Compensation Act resolves the issue before us. *See DeWitt*, 2009-NMSC-032, ¶ 14. Although the Legislature used the word "total" with respect to temporary total disability, it did not equate it with the "total disability" that entitles a worker to benefits for the worker's remaining life. Because a designation of temporary total disability contemplates that the worker will reach maximum medical improvement and return to work, it would be inconsistent for the Legislature to have intended that workers receiving temporary total disability benefits be paid for the remainder of the worker's life. Such an interpretation is inconsistent with the statutory scheme of being able to return to work "with minimal dependence on compensation awards." Section 52-1-26(A). Indeed, this inconsistency is underscored by the temporary nature of temporary total disability benefits that are subject to a subsequent determination of maximum medical improvement. *See Montoya v. Herrera*, 2012-NMSC-011, ¶ 11, 276 P.3d 952 ("We must take care to avoid adoption of a construction that would render the statute's application absurd or unreasonable or lead to injustice or contradiction." (internal quotation marks and citation omitted)). Although Section 52-1-41(A) does not specifically make reference to permanent total disability in Section 52-1-25, when we "construe the provisions of the [Workers' Compensation] Act together to produce a harmonious whole[,]" *DeWitt*, 2009-NMSC-032, ¶ 14, we understand Section 52-1-41(A) to refer only to a permanent total disability under Section 52-1-25. In that manner, Section 52-1-41(A) fulfills the purpose of the Workers' Compensation Act of providing permanent financial security to an injured worker who requires a permanent source of income for the worker's lifetime.

{17}    The WCJ determined, and Worker argues, that the Legislature intended temporary total disability benefits to "be limited only by the spigot of medical judgment that a worker is, or is no longer, at [maximum medical improvement] status." Under this approach, we would have to read the language providing "benefits for the remainder of his life" in Section

6

52-1-41(A) to mean that payment of total disability benefits is periodic and indefinite in duration over the remainder of the worker's lifetime and is dependent solely on whether worker has reached maximum medical improvement and is entitled to either permanent total disability or permanent temporary disability. Had the Legislature intended this approach, the Legislature would have used clearer language and not provided benefits for the "remainder of [a worker's] life[,]" language that implies continuing benefits until death. *See Colonias Dev. Council v. Rhino Envtl. Servs., Inc.*, 2003-NMCA-141, ¶ 17, 134 N.M. 637, 81 P.3d 580 (stating that the Legislature would have provided a much "clearer indication" if it had intended a statute to a more expansive meaning), *rev'd on other grounds*, 2005-NMSC-024, 138 N.M. 133, 117 P.3d 939; *Webster's Third New International Dictionary* 1919 (Unabridged 1993) (defining "remainder" as " a remaining group, part, or trace" and "remain" as "to continue unchanged in form, condition, status, or quantity"). A more natural reading of Section 52-1-41(A) is that the Legislature specifically used the phrase providing "benefits for the remainder of his life" for the specific purpose of providing lifetime benefits exclusively for permanent total disability.

**{18}** Moreover, at least one issue before the Court is whether to apply the durational limit contained in Section 52-1-47(A) to temporary total disability benefits. Section 52-1-47 expressly provides an exception for lifetime benefits awarded under Section 52-1-41(A). By the plain language of Section 52-1-41(A), such lifetime benefits are benefits that a worker receives for the remainder of the worker's life. As we have stated, temporary total disability benefits, by their temporary nature, do not continue for a worker's lifetime.

**{19}** Because the exception of Section 52-1-41(A) does not apply for temporary total disability benefits, we must determine the applicable durational limits for temporary total disability benefits. We turn first to Section 52-1-42. Section 52-1-42(A)(1), (2) provides a 500- or 700-week duration limit, but it applies only to permanent partial disability, and temporary total disability is neither "permanent" nor "partial." *See* § 52-1-25.1. However, Section 52-1-42(B) remains relevant. It states:

> If an injured worker receives temporary total disability benefits prior to an award of partial disability benefits, the maximum period for partial disability benefits shall be reduced by the number of weeks the worker actually receives temporary total disability benefits.

**{20}** Through Section 52-1-42(B), the Legislature has demonstrated its intent that temporary total disability benefits are not excepted from the durational limits for permanent partial benefits. Indeed, by its plain language, Section 52-1-42(B) requires temporary total disability benefits to be included in the calculation of the durational limits of subsequent permanent partial benefits. As we have discussed, the design of the Workers' Compensation Act is that an injured worker will receive temporary total disability benefits until the worker has reached maximum medical improvement and receives permanent partial disability benefits. Sections 52-1-25.1, -26.

7

**{21}** We acknowledge that there may be situations in which a worker receives permanent partial disability benefits and subsequently aggravates the injury and qualifies for temporary total disability only to not receive benefits because the worker exhausted the durational limit for permanent partial disability. Although the Workers' Compensation Act is intended to protect injured workers and provide financial security, *Madrid*, 1996-NMSC-064, ¶ 8, this result is a legislative decision striking a balance between the interests of the employer and the worker. *See* NMSA 1978, § 52-5-1 (1990) ("It is the intent of the [L]egislature [that the Workers' Compensation Act] be interpreted to assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers . . . based on a mutual renunciation of common law rights.").

**{22}** We next turn to Section 52-1-47(A). Except for the lifetime benefits provision set forth in Section 52-1-41(A), Section 52-1-47(A) provides a 700-week limit for "compensation benefits for *any* combination of disabilities." (Emphasis added.) The plain language of Section 52-1-47(A) evinces a legislative intent to provide an absolute limit of 700 weeks for "any" compensation benefits awarded under the Worker's Compensation Act, except for lifetime benefits set forth in Section 52-1-41(A). We have determined that Section 52-1-41(A) does not apply to temporary total disability. Thus, because temporary total disability does not fall within the Section 52-1-41(A) lifetime benefits exception, the 700-week durational limit of Section 52-1-47(A) applies to temporary total disability benefits. Although Worker argues that Section 52-1-47(A) contemplates a combination of compensation benefits that does not include temporary total disability benefits, Section 52-1-47(A) limits to 700 weeks "compensation benefits for any combination of disabilities" without any exception other than for lifetime benefits.

**{23}** In sum, the WCJ erred in holding that the temporary total disability benefits awarded to Worker were subject to payment over an indefinite duration pursuant to Section 52-1-41(A). The temporary total disability benefits are subject to the 700- week durational limit in Section 52-1-47(A). We therefore reverse the WCJ on this issue.

**CHANGED MAXIMUM MEDICAL IMPROVEMENT STATUS**

**{24}** Vista Care next argues that the WCJ erred in concluding that Worker was no longer at maximum medical improvement as of March 14, 2007, even though the WCJ had previously determined that Worker was at maximum medical improvement prior to April 27, 2006. Particularly, Vista Care argues that Worker's prior admission that she was at maximum medical improvement when applying for lump sum payments precluded the WCJ from determining that Worker was no longer at maximum medical improvement as of the date that Dr. Cash recommended that Worker undergo the anterior-posterior lumbar fusion of L3-4.

**{25}** The date of maximum medical improvement is defined as "the date after which further recovery from or lasting improvement to an injury can no longer be reasonably anticipated based upon reasonable medical probability as determined by a health care

provider." Section 52-1-24.1. The Workers' Compensation Act provides for the modification of a compensation order. In relevant part, NMSA 1978, Section 52-5-9 (1989) provides that

A. Compensation orders are reviewable subject to the conditions stated in this section upon application of any party in interest in accordance with the procedures relating to hearings. The [WCJ], after a hearing, may issue a compensation order to terminate, continue, reinstate, increase, decrease or otherwise properly affect compensation benefits provided by the Workers' Compensation Act . . . .

B. A review may be obtained upon application of a party in interest filed with the director at any time within two years after the date of the last payment or the denial of benefits upon the following grounds:

(1) change in condition[.]

Further, Section 52-1-56 provides that

The [WCJ] may, upon the application of the employer, worker or other person bound by the compensation order, fix a time and place for hearing upon the issue of claimant's recovery. . . . If it appears upon such hearing that the disability of the worker has become more aggravated or has increased without the fault of the worker, the [WCJ] shall order an increase in the amount of compensation allowable as the facts may warrant.

**{26}** Under these statutory provisions, the WCJ had the authority to modify the maximum medical improvement determination upon a change of condition if Worker's injury became aggravated or worsened to an extent that Worker was no longer at maximum medical improvement. No statutory provision precludes such a modification because Worker previously admitted to being at maximum medical improvement and requested lump sum payment of benefits. *Cf. Benny v. Moberg Welding*, 2007-NMCA-124, ¶¶ 6-12, 142 N.M. 501, 167 P.3d 949 (holding that Section 52-5-9 and Section 52-1-56 provide authority for the WCJ to grant temporary total disability benefits even after the worker received a lump sum settlement for permanent partial disability benefits).

**{27}** Based on the evidence presented at trial, the WCJ concluded that "Worker's spinal condition slowly deteriorated and aggravated after her April 27, 2006 [maximum medical improvement] date." Further, the WCJ concluded that "March 14, 2007 was the clear date on which Worker's condition had changed sufficiently to warrant a recommendation for scheduling of the surgical procedure" and therefore, "Worker was no longer at [maximum medical improvement] status for her work injuries on March 14, 2007." Vista Care does not challenge the sufficiency of the evidence to support these findings, and the findings are therefore binding on appeal. *Rendleman v. Heinley*, 2007-NMCA-009, ¶ 10, 140 N.M. 912,

9

149 P.3d 1009 ("An unchallenged finding is binding on appeal."). The WCJ had the authority to modify the designation that Worker was at maximum medical improvement and find that Worker was no longer at maximum medical improvement as of March 14, 2007.

**{28}** Vista Care cites *Souter v. Ancae Heating & Air Conditioning*, 2002-NMCA-078, 132 N.M. 608, 52 P.3d 980, *disproved in part by Benny*, 2007-NMCA-124, for the proposition that "the need for and receipt of additional medical treatment does not alter the prior date and finding that worker has reached [maximum medical improvement]." However, *Souter* dealt with an inapposite issue. In *Souter*, this Court held that lump sum payments exhausting a worker's awarded permanent partial disability benefits did not preclude the worker from petitioning for a modification of benefits for a change in condition as long as the worker sought the modification during the statutory durational period beginning when the permanent partial disability benefits were first awarded. *Id.* ¶¶ 18-22. *Souter* did not address a change of a worker's maximum medical improvement status or a worker's maximum medical improvement date and is not applicable to this case.

**CREDIT FOR LUMP SUM ADVANCES**

**{29}** Vista Care lastly argues that the WCJ erred in determining that Vista Care is not entitled to a credit for its lump sum advances of future permanent partial disability benefits applied to the awarded temporary total disability benefits. "New Mexico does not provide a statutory section in the [Workers'] Compensation Act, which deals with the question of overpayment of prejudgment compensation benefits." *Paternoster v. La Cuesta Cabinets, Inc.*, 101 N.M. 773, 776, 689 P.2d 289, 292 (Ct. App. 1984) (citation omitted). Accordingly, fundamental fairness, "which balances the compensation goals of the [Workers' Compensation] Act against the principle of fundamental fairness toward the employer" guides courts in determining whether and under what circumstances a credit for overpayment will be permitted. *Id.* at 779, 689 P.2d at 295. We will not disturb a WCJ's determination concerning whether a credit applies absent an abuse of discretion. *See id.* ("[T]he [district] court has discretion to make an award of credit which balances the compensation goals of the [Workers' Compensation] Act against the principle of fundamental fairness toward the employer."); *West v. Home Care Res.*, 1999-NMCA-037, ¶ 13, 127 N.M. 78, 976 P.2d 1030 (Ct. App. 1999) (stating that review of the method for applying credit to a WCJ's determination is limited to whether the WCJ abused his or her discretion). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. "A [district] court abuses its discretion when it exercises its discretion based on a misunderstanding of the law." *Chavez v. Lovelace Sandia Health Sys., Inc.*, 2008-NMCA-104, ¶ 25, 144 N.M. 578, 189 P.3d 711.

**{30}** Vista Care paid $78,428.38 in lump sum advances for debt to Worker for future permanent partial disability benefits, and, at the time the WCJ issued the compensation order, Worker had been overpaid $12,038.90. The WCJ determined that, although Vista Care was entitled to a credit for any weekly permanent partial disability or partial temporary

10

total disability payment made after March 14, 2007, Vista Care was not entitled to a credit for the lump sum permanent partial disability advances as applied to the awarded temporary total disability benefits because the advances were purely for permanent partial disability benefits. The WCJ reached this conclusion that "credit issues are irrelevant to payment of [temporary total disability] benefits because Worker may potentially receive such benefits beyond [the] 500[-] or 700[-]week limits established under Section 52-1-42."

**{31}** Apparently, the WCJ concluded that the credit issues were irrelevant to the payment of temporary total disability benefits because "it is customary to apportion the credit for lump-sum payments by shortening the number of weeks that compensation is paid; that is, by applying the credit at the back-end of the weekly compensation award." *West*, 1999-NMCA-037, ¶ 13. Because credits are typically applied to the back-end of a compensation award, the WCJ apparently concluded that a credit was not applicable in this case because of the indefinite duration of the temporary total disability awarded. However, as we concluded, Worker may not receive temporary total disability benefits beyond the 700-week limit established in Section 52-1-47(A). On remand, the WCJ should consider how the 700-week limitation period affects the application of any potential credit for lump sum advances of permanent partial disability benefits.

**CONCLUSION**

**{32}** We hold that (1) temporary total disability benefits are subject to the 700-week durational limitation found in Section 52-1-47(A); (2) the WCJ did not err in concluding that Worker was not at maximum medical improvement on March 14, 2007, despite a previous finding of maximum medical improvement; and (3) on remand, the WCJ should consider how the 700-week limitation period affects the application of any potential credit for lump sum advances of permanent partial disability benefits. Accordingly, we reverse in part and affirm in part, and we remand to the WCA for further proceedings consistent with this opinion.

**{33}    IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Fowler v. Vista Care*, No. 31,438**

11

**APPEAL AND ERROR**
Remand
Standard of Review

**STATUTES**
Interpretation
Legislative Intent
Rules of Construction

**WORKERS COMPENSATION**
Lump Sum Payment
Modification or Termination of Benefits
Time Limitations