IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: June 5, 2014

Docket No. 33,993

SHERRIE FOWLER,

      Worker-Petitioner,

v.

VISTA CARE and AMERICAN HOME
INSURANCE COMPANY,

      Employer/Insurer-Respondents.

ORIGINAL PROCEEDING ON CERTIORARI
Victor S. Lopez, Workers' Compensation Judge

Ralph Rodney O. Dunn III
Rio Rancho, NM

for Petitioner

Butt Thornton & Baehr, P.C.
Emily A. Franke
David N. Whitham
Albuquerque, NM

for Respondent

OPINION

DANIELS, Justice.

{1}    The New Mexico Workers' Compensation Act (the Act), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2013), provides for temporary total disability (TTD) benefits for injured workers. The Court of Appeals held that the Act limits Appellant Sherrie Fowler's eligibility for TTD benefits to 700 weeks of benefits and reversed a contrary decision of the Workers' Compensation Administration judge. *See Fowler v. Vista Care*, 2013-NMCA-036, ¶ 23, 298 P.3d 491. We conclude that the Act imposes no such limitation;

1

TTD benefits are payable during any period of total disability for the remainder of a worker's life.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

**{2}**      While working for Vista Care (Employer), Fowler suffered a back injury on April 7, 2003. Fowler began receiving TTD benefits pursuant to Section 52-1-41, and subsequently underwent back surgery later in 2003. On January 11, 2006, a physician determined that Fowler reached maximum medical improvement (MMI). *See* § 52-1-24.1 (defining MMI as "the date after which further recovery from or lasting improvement to an injury can no longer be reasonably anticipated"); *Rael v. Wal-Mart Stores, Inc.*, 1994-NMCA-017, ¶ 14, 117 N.M. 237, 871 P.2d 1 ("[A] determination of MMI . . . is merely a determination that [a w]orker has reached a plateau of medical stability for the foreseeable future."). Following the MMI determination, Fowler's TTD benefits were terminated. *See* § 52-1-25.1 (stating reasons why a worker may become ineligible for TTD benefits prior to reaching MMI); *Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, ¶ 7, 122 N.M. 524, 928 P.2d 250 ("Eligibility for the various temporary benefits provided under the Act ends at the date of MMI," after which a worker must establish a permanent disability status in order to receive further benefits.). In March 2006 Fowler requested a lump sum payment of permanent partial disability (PPD) benefits, *see* NMSA 1978, § 52-5-12 (2003, amended 2009), which the Workers' Compensation Administration (WCA) judge granted on April 27, 2006. Fowler continued receiving medical treatment for her back injury, and on March 14, 2007, her physician determined that her condition had deteriorated and recommended that she undergo another surgery.

**{3}**      This case began when Fowler filed a complaint with the WCA on March 16, 2010, for reinstatement of her TTD benefits and for an increase in her PPD rating. *See* § 52-1-26(D) (discussing "PPD rating" in terms of "impairment"); § 52-1-24(A) (defining "impairment"); *see also* § 52-5-12(B) (discussing "compensation benefits" in terms of "impairment rating"). Fowler underwent the additional surgery on July 13, 2010, the date on which Employer's reinstatement of Fowler's TTD benefits took effect. Employer authorized payment for the July 13, 2010, surgery prior to the surgery. But because Employer and Employer's insurer disputed whether the July 13, 2010, surgery was related to Fowler's April 2003 injury, the case was set for trial before a WCA judge. The trial proceeded on two issues: (1) whether Fowler was entitled to reinstatement of TTD benefits prior to the July 13, 2010, surgery and (2) whether her continued entitlement to TTD benefits was subject to any duration limit.

**{4}**      The WCA judge issued an order finding that Fowler was entitled to receive TTD benefits as of March 14, 2007, when the physician determined that Fowler was no longer at MMI. In a memorandum opinion, the WCA judge concluded that TTD benefits are not limited by the 500-week or 700-week periods applicable to PPD benefits under Section 52-1-42(A) because the statutory language "clearly establishes that it does not exclude 'temporary' total disability benefits from the *potential* payment of disability benefits 'for

life.'"

**{5}** The Court of Appeals affirmed the WCA judge's order on the issue of Fowler's entitlement to reinstatement of TTD benefits because it concluded that Fowler was no longer at MMI as of March 14, 2007, *see Fowler*, 2013-NMCA-036, ¶ 27, but reversed the conclusion of the WCA judge's memorandum opinion that no time limit applies to TTD benefits, *id.* ¶ 23. The Court of Appeals held that Section 52-1-47 of the Act imposes a 700-week limit on TTD benefits, *see id.* ¶ 22, and directed the WCA judge to consider how the duration limit would affect the application of any potential credit for lump sum advances, *see id.* ¶ 31. We granted certiorari, *see Fowler v. Vista Care*, 2013-NMCERT-003, to review de novo the Court of Appeals' interpretation of the Act. *See Romero Excavation & Trucking, Inc. v. Bradley Constr., Inc.*, 1996-NMSC-010, ¶ 5, 121 N.M. 471, 913 P.2d 659 ("The meaning of statutory language is a matter of law." (internal quotation marks and citation omitted)).

## II.    DISCUSSION

**{6}** The Act provides injured workers with a minimum level of financial security while they are receiving medical care for their work-related injuries and are otherwise unable to work. *See* NMSA 1978, § 52-5-1 (1990) ("It is the intent of the legislature in creating the [WCA] that the laws administered by it to provide a workers' benefit system be interpreted to assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers who are subject to the provisions of the [Act]."). The Act provides benefits for total disability, *see* § 52-1-41, and PPD, *see* § 52-1-42.

**{7}** The Court's guiding principle when construing statutes "is to determine and give effect to legislative intent." *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105. To discern the Legislature's intent, we rely on the classic canons of statutory interpretation and "look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135 (internal quotation marks and citation omitted). We will not read the plain language of the statute in a way that is "absurd, unreasonable, or contrary to the spirit of the statute," *State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022, and will not read any provision of the statute in a way that would render another provision of the statute "null or superfluous," *State v. Rivera*, 2004-NMSC-001, ¶ 18, 134 N.M. 768, 82 P.3d 939. "'Statutory language that is clear and unambiguous must be given effect.'" *Albuquerque Bernalillo Cnty. Water Util. Auth. v. N.M. Pub. Regulation Comm'n*, 2010-NMSC-013, ¶ 52, 148 N.M. 21, 229 P.3d 494 (citation omitted).

**{8}** There are two types of total disability: permanent total disability, *see* § 52-1-25(A) (stating that a permanent total disability includes a "total loss or loss of use of" any two

3

limbs), and TTD, *see* § 52-1-25.1(A) (stating that a TTD is the "inability of a worker, by reason of accidental injury arising out of and in the course of the worker's employment, to perform the duties of that employment prior to the date of the worker's [MMI]."). Fowler presents a question concerning her eligibility for TTD benefits. At issue in this case is whether the payment of TTD benefits to a worker is subject to any of the duration limits found in Section 52-1-42 for PPD and in Section 52-1-47 for combinations of disabilities.

{9} Section 52-1-41(A) of the Act provides for total disability benefits, stating that "the worker shall receive, during the period of that disability," an amount of benefits determined by a specified formula and that "the worker shall receive compensation benefits for the remainder of his life." Section 52-1-41(A) explicitly states that total disability benefits are available only during a period of total disability. *Id.* It also states that a worker's eligibility for total disability benefits extends "for the remainder of [the worker's] life." *Id.* The statutory language does not indicate that the compensation benefits for total disability are to be administered differently depending on whether the total disability is "temporary" or "permanent." *See, e.g.*, *Breen*, 2005-NMSC-028, ¶¶ 1, 10 (discussing the lifetime compensation benefit under Section 52-1-41(A) as applicable to workers whose injuries resulted in "temporary total . . . impairments").

{10} We know from other provisions in the Act that a worker is entitled to TTD benefits only until the worker reaches MMI, *see* § 52-1-25.1(A), and will not be entitled to TTD benefits prior to reaching MMI if a worker's physician releases the worker to return to work and either the employer offers work at the preinjury wage, *see* § 52-1-25.1(B)(1), or the worker accepts work from another employer at the preinjury wage, *see* § 52-1-25.1(B)(2). This scheme acknowledges the realistic possibility that some workers may become totally disabled for a period of time, reach MMI or be released for work by their physicians before MMI and return to work, and later face subsequent work-related injuries or find their existing injuries exacerbated, rendering them totally disabled yet again.

{11} Fowler is an example of the workers who may become eligible for TTD benefits any number of times throughout their lives so long as they are deemed totally disabled by their healthcare providers. *See* § 52-1-24.1 (defining "date of [MMI]" as "the date after which further recovery from or lasting improvement to an injury can no longer be reasonably anticipated based upon reasonable medical probability *as determined by a health care provider*") (emphasis added)).

{12} What is clear is that Section 52-1-41(A) contemplates that a temporarily disabled worker will reach MMI and return to work because it limits a worker's eligibility for total disability benefits to the period in which the worker is totally disabled. *See* § 52-1-41(A) (stating that for a total disability, "the worker shall receive, during the period of that disability, . . . compensation benefits for the remainder of his life."). It is not inconsistent to read Section 52-1-41(A) to mean that a worker is eligible for TTD benefits for the remainder of the worker's life. The fact that Fowler remains eligible for total disability benefits for the duration of her life does not mean that she will necessarily receive TTD benefits in

4

perpetuity or that the distinction between "permanent" and "temporary" is undermined; a worker like Fowler can come in and out of TTD based on medical determinations of MMI for the remainder of her life.

{13}    Although the relevant statutory language strongly suggests that a worker is eligible for TTD benefits for life so long as the worker has not reached MMI, we exercise "caution" in relying only on the plain language of a statute because "'[i]ts beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning.'" *Smith*, 2004-NMSC-032, ¶ 9 (quoting *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352). The plain meaning rule "must yield on occasion to an intention otherwise discerned in terms of equity, legislative history, or other sources." *Sims v. Sims*, 1996-NMSC-078, ¶ 21, 122 N.M. 618, 930 P.2d 153 (internal quotation marks and citation omitted). We look now to the history, background, and overall structure of Section 52-1-41 as well as its "function within a comprehensive legislative scheme." *See Rivera*, 2004-NMSC-001, ¶ 13.

{14}    Looking to other relevant provisions in the Act, we recognize that eligibility for PPD benefits is explicitly limited in time:

> The duration of partial disability benefits shall depend upon the extent and nature of the partial disability, subject to the following:
>      (1) where the worker's percentage of disability is equal to or greater than eighty, the maximum period is seven hundred weeks;
>      (2) where the worker's percentage of disability is less than eighty, the maximum period is five hundred weeks.

Section 52-1-42(A). We acknowledge that, according to the WCA judge's order, the WCA's practice "has involved the assumption—albeit an un-tested [sic] or unstudied assumption—that TTD benefits are subject to the same numerical limits as apply to PPD benefits." Despite whatever WCA practice may exist, we conclude as the WCA judge concluded: The limitations on PPD benefits do not apply to TTD benefits.

{15}    Section 52-1-42(A) authorizes PPD benefits when a worker suffers a "permanent impairment." *See* § 52-1-26. The duration of PPD benefits depends on the "extent and nature of the [PPD]." Section 52-1-42(A). Section 52-1-42 does not limit the worker's eligibility for future total disability benefits should they become necessary.

{16}    If a worker has received TTD benefits prior to an award of PPD benefits, only Subsection B of Section 52-1-42 affects the PPD benefits to which a worker is entitled and does so by reducing the period of PPD benefit payments. *See* § 52-1-42(B) ("If an injured worker receives [TTD] benefits prior to an award of partial disability benefits, the maximum period for partial disability benefits shall be reduced by the number of weeks the worker actually receives [TTD] benefits.").

**{17}** Section 52-1-42(B) contemplates an injured worker who is totally disabled for a period of time but ultimately recovers to such an extent that the worker can return to work while still suffering a lingering permanent disability that is less than a total disability. This limitation reducing eligibility for PPD benefits does not indicate an intent of the legislature to limit eligibility for TTD benefits. Section 52-1-42(B) only limits the duration of PPD benefits.

**{18}** The legislative history of Section 52-1-41 indicates that the Legislature intended the eligibility for total disability benefits to exist without a limit on duration. In 1990 the Legislature amended Section 52-1-41, specifically removing the duration limits that previously applied to total disability compensation benefits. *Compare* 1989 N.M. Laws, ch. 263, § 23.A (stating that, for total disability, the worker shall receive weekly benefits according to a defined schedule "but in no event to exceed a period of seven hundred weeks, except for total disability resulting from: (1) primary mental impairment, in which case the maximum period is one hundred weeks; or (2) secondary mental impairment, in which case the maximum period is the maximum period allowable for the disability produced by the physical impairment or one hundred weeks, whichever is greater"), *with* 1990 N.M. Laws, 2d Sess., ch. 2, § 17.A (imposing no duration limit of any kind on total disability compensation benefits except benefits received for injuries incurring mental impairment or death as indicated in Subsections B and C of Chapter 2, Section 17).

**{19}** Also in 1990 when the Legislature amended Section 52-1-41 to remove the duration limits for total disability benefits from Subsection A, it enacted Section 52-1-25.1 expressly defining "temporary total disability." *See* 1990 N.M. Laws, 2d Spec. Sess., ch. 2, § 10.A. The Legislature specifically numbered Section 52-1-25.1 as a subpart of Section 52-1-25 defining "permanent total disability," which indicates its intent that the concept of TTD be interpreted together with the concept of permanent total disability. *See* 1990 N.M. Laws, 2d Spec. Sess., ch. 2, § 9.A (defining permanent total disability); *see also Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2012-NMSC-039, ¶ 22, 289 P.3d 1232 ("Where the Legislature determines a particular 'position of an act within the entire body of statutory enactment[,] the location of the new statute in the code will necessarily be considered as an indication of which is the related legislation.'" (citation omitted)); Norman J. Singer and J.D. Shambie Singer, *Sutherland Statutory Constr.* § 21:3 at 166 (7th ed. 2009) ("The importance of selecting the position of an act within the entire body of statutory enactment cannot be overemphasized."). Section 52-1-41 applies whether the total disability is temporary or permanent.

**{20}** The fact that the Legislature removed the duration limits from Section 52-1-41(A) in the same year it expressly created "temporary total disability" as a new subsection of the definition for total disability strongly suggests that the Legislature intended to classify *both* temporary total disability benefits and permanent total disability benefits as lifetime benefits. *See State v. Davis*, 2003-NMSC-022, ¶ 12, 134 N.M. 172, 74 P.3d 1064 (observing that the principle of reading statutes together to discern legislative intent "has the greatest probative force in the case of statutes relating to the same subject matter passed at the same session of

6

the legislature").

**{21}** Employer points to Section 52-1-47(A) as a limit on a worker's eligibility for total disability benefits under Section 52-1-41 because Subsection A limits the benefits available for "any combination of disabilities."

> Subject to the limitation of compensation payable under Subsection G of Section 52-1-46 NMSA 1978 and *except for provision of lifetime benefits for total disability awarded pursuant to Section 52-1-41 NMSA 1978*:
> . . . compensation benefits for *any combination of disabilities* or any combination of disabilities and death shall not be payable for a period in excess of seven hundred weeks[.]

Section 52-1-47(A) (emphasis added). Looking to the plain language of Subsection A, we see that the 700-week limit it prescribes does not apply to total disability benefits under Section 52-1-41 because Section 52-1-47(A) states that the 700-week limit for any combination of injuries applies "except for provision of lifetime benefits for total disability awarded pursuant to Section 52-1-41." Because we have concluded that TTD benefits are lifetime benefits under Section 52-1-41, we must give effect to the unambiguous language of Section 52-1-47 excluding TTD pursuant to Section 52-1-41 from its application of limits. *See Albuquerque Bernalillo Cnty. Water Util. Auth.*, 2010-NMSC-013, ¶ 52. Section 52-1-47 is not rendered superfluous by our conclusion that TTD benefits are not limited by Section 52-1-47(A) because its 700-week limit still restricts awards for compensation benefits for any combination of disabilities described under Sections 52-1-42 to -46, which includes permanent partial disabilities under Sections 52-1-42, certain scheduled injuries under Section 52-1-43, facial disfigurement injuries under Section 52-1-44, injuries that cause hernias under Section 52-1-45, and injuries proximately resulting in death under Section 52-1-46.

**{22}** We also must consider whether the WCA has in fact implemented a policy applying the PPD duration limits to TTD benefits, creating a "longstanding interpretation" that cannot be changed nonlegislatively. *See, e.g.*, *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 9, 126 N.M. 413, 970 P.2d 599 ("An administrative gloss is placed on an ambiguous clause of a [law] when those responsible for its implementation interpret the clause in a consistent manner and apply it to similarly situated applicants over a period of years without legislative interference. If an administrative gloss is indeed found to have been placed on a clause, [this Court] may not change such a de facto policy, in the absence of legislative action, because to do so would presumably violate legislative intent." (internal quotation marks and citation omitted)); *Pub. Serv. Co. of N.M. v. N.M. Taxation & Revenue Dep't*, 2007-NMCA-050, ¶ 41, 141 N.M. 520, 157 P.3d 85 ("In construing statutes and regulations, courts will 'give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them.' Such longstanding constructions, also known as 'administrative glosses,' constitute de facto agency policies that

7

cannot be changed non-legislatively." (citations omitted)). However, this record includes no evidence of a longstanding WCA interpretation of the Act imposing the PPD duration limits on TTD benefits. The WCA judge's statement to that effect is unsupported, and Employer has not provided any authority, administrative or judicial, to support such an interpretation. *See Pub. Serv. Co. of N.M.*, 2007-NMCA-050, ¶¶ 42, 53 (holding the administrative gloss rule inapplicable where the proponent failed to provide evidence of a longstanding agency policy).

**{23}** Even if the WCA had applied such a time limit to TTD benefits, we would not defer to it in this case because that application is not a reasonable interpretation of the Act. The plain language and legislative history of Section 52-1-41 indicates that the Legislature intended TTD benefits to be available for the entire life of a worker. *See Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 13, 133 N.M. 97, 61 P.3d 806 ("[I]t is the function of the courts to interpret the law, and courts are in no way bound by the agency's legal interpretation." (internal quotation marks and citation omitted)); *see also Jicarilla Apache Nation v. Rodarte*, 2004-NMSC-035, ¶ 25, 136 N.M. 630, 103 P.3d 554 ("[W]e are not bound by an agency's interpretation of the law, but we do give deference to an agency's reasonable interpretation or application of law.").

## III.  CONCLUSION

**{24}** We reverse the Court of Appeals and affirm the WCA order.

**{25}  IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**